[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14771

Non-Argument Calendar

_____

CHARLES E. ABRAHAMSEN,

Petitioner,

*versus*

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

Petition for Review of a Decision of the
Merit Systems Protection Board
Agency No. AT-1221-17-0435-W-3

_____

Before JORDAN, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Charles Abrahamsen petitions for review from the decision of an administrative judge of the Merit Systems Protection Board (MSPB) denying Abrahamsen's request for corrective action in a Whistleblower Protection Act (WPA) case brought under 5 U.S.C. § 2302(b)(8)-(b)(9).  Abrahamsen raises two issues in his petition: (1) the MSPB erred by ignoring Abrahamsen's disclosures of abuse of authority and substantial and specific danger related to bullying in the healthcare setting, and (2) the MSPB erred by applying the wrong legal standard to Abrahamsen's disclosures of substantial and specific danger to public health and safety.  For the reasons detailed below, we deny Abrahamsen's petition.

## I.  BACKGROUND

On May 3, 2016, Abrahamsen filed a complaint with the Office of Special Counsel (OSC) alleging that the Department of Veterans Affairs, specifically his supervisor at Bay Pines VA Healthcare System, Dr. Patricia Baumann, retaliated against him for making six protected disclosures on various dates over a four-year period from 2013 to 2016.

In Disclosure A, Abrahamsen alleged his disclosure was "[t]hat it was [his] decision when to operate on a hip fracture on a weekend or holiday.  That if [he] believed it endangered a patient's safety to wait until normal business hours, [he] would operate after

hours." This disclosure took place on September 3, 2013, the day after Abrahamsen performed an operation on the Labor Day holiday, when Baumann pulled Abrahamsen aside to tell him, "[y]ou have to stop operating on weekends. We could get dinged." This disclosure also identified another incident on September 12, 2013, where Abrahamsen and Baumann had a disagreement witnessed by other employees concerning consulting a hospitalist for a medication assistance. Abrahamsen alleged these incidents evidenced both abuse of authority and substantial and specific dangers to public health or safety.

In Disclosure B, Abrahamsen alleged his disclosure was "[t]hat there is scientific evidence that spinal anesthesia is safer than general anesthesia for total knee and hip replacements." This disclosure took place on July 10, 2014, when Abrahamsen told Dr. Dubravka Jovanovic, an anesthesiologist, that he had requested spinal anesthesia for a patient. After a disagreement, Jovanovic "stormed out of the room," and another anesthesiologist had to supervise the surgery. Abrahamsen believed Jovanovic then went to Baumann to complain about the incident. Abrahamsen alleged this incident evidenced a substantial and specific danger to public health or safety.

In Disclosure C, Abrahamsen alleged his disclosure was "[t]hat veterans receiving total knee and hip replacement surgery were all being done under general anesthesia." This disclosure took place on March 12, 2015, at a Morbidity and Mortality (M&M) Conference where Abrahamsen presented evidence that spinal

anesthesia was safer than general anesthesia, with less risk of surgical site infection.  Abrahamsen presented this evidence because one of the presentations on that date was a patient of Baumann who developed a surgical site infection after a total knee replacement.  Abrahamsen represented that after an investigation of that patient's case, an email was sent on April 9, 2015, confirming that "100% of the total knee and total hip replacements at Bay Pines were being done under general anesthesia."  Abrahamsen alleged this incident evidenced a substantial and specific danger to public health or safety.

In Disclosure D, Abrahamsen alleged his disclosure was that he "presented scientific evidence that there is a 5-fold increased incidence of stroke when a total hip or knee replacement is performed under general anesthesia."  This disclosure took place on April 14, 2016, at a M&M Conference where Abrahamsen presented this evidence in response to a case presented of a patient who died from a stroke after a total hip replacement performed by Baumann.  Abrahamsen alleged this incident evidenced a substantial and specific danger to public health or safety.

In Disclosure E, Abrahamsen alleged his disclosure was his "concern of unnecessary general anesthesia being performed on a veteran."  This disclosure took place on September 17, 2013, during morning rounds when Baumann was working on a consent for surgery for the reduction of a dislocated shoulder and Abrahamsen asked Baumann, "any consideration for a shoulder CT scan?"  Abrahamsen's intent was to suggest more information was needed

before subjecting a patient to a potentially unnecessary general anesthetic. This caused Baumann to lose her temper and blow up at Abrahamsen, saying "[d]o you want to take over the care of this patient?" Baumann then turned her back on Abrahamsen and finished the consent for surgery. Abrahamsen alleged this incident evidenced an abuse of authority and a substantial and specific danger to public health or safety.

In Disclosure F, Abrahamsen alleged his disclosure was "his concern that chest x-rays must be ordered and performed, with the accompanying radiation exposure, on all veterans preoperatively, even when they are unnecessary." This disclosure took place on July 23, 2014, to Dr. Edward Hong, who responded "I don't think that's a battle worth fighting." Abrahamsen believes Hong's response and lack of action were related to Baumann's frequent retaliation with personal attacks and her inability to control her temper. Abrahamsen alleged this incident evidenced an abuse of authority and a substantial and specific danger to public health or safety.

Abrahamsen alleged Baumann took various actions against him in reprisal for the protected disclosures, specifically that she extended his Focused Professional Practice Evaluation period, issued written counseling statements, and changed his job duties and working conditions by precluding him from performing certain surgeries. On February 15, 2017, the OSC notified Abrahamsen that it was terminating its investigation into his complaint and provided him with appeal rights to the MSPB.

Abrahamsen then filed an individual right of action (IRA) appeal to the MSPB, citing the same six disclosures. After engaging in discovery, the MSPB held a six-day hearing with 13 witnesses. In a thorough 32-page decision issued after the hearing, the MSPB determined that Abrahamsen failed to establish a *prima facie* case for whistleblower reprisal because none of his disclosures were protected under the WPA. Rather, Abrahamsen's disclosures "constitute mere observations, questions, arguments, or disagreements with management policies, positions, or practices, without an accompanying showing that such matters constitute a report of wrongdoing of the type specified by the statute." The MSPB found Abrahamsen had not established that the disclosures were protected by disclosing a substantial and specific danger to public health and safety or by showing an abuse of authority. Abrahamsen filed a petition for review in this court on December 23, 2020.

## II.  STANDARD OF REVIEW

In the past, this Court had jurisdiction over petitions for review in "mixed" cases where whistleblower claims were coupled with discrimination claims. *See Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002). The U.S. Court of Appeals for the Federal Circuit had exclusive jurisdiction over petitions for review of MSPB decisions that involved only whistleblower claims. *Id.*; 5 U.S.C. § 7703(b) (effective Oct. 30, 1998). This changed when Congress passed the Whistleblower Protection Enhancement Act (WPEA), Pub. L. No. 112-199, § 108(a), 126 Stat. 1465 (2012) (codified as amended at 5 U.S.C. § 7703(b)(1)). In 2012, Congress,

through the WPEA, expanded this jurisdiction to include "any court of appeals of competent jurisdiction." 5 U.S.C. § 7703(b)(1)(B). The WPEA did not amend the standard of review provided in 5 U.S.C. § 7703(c), which applies to "any case filed in the United States Court of Appeals for the Federal Circuit."

This Court previously determined that non-discrimination claims in mixed cases should be reviewed under the same deferential statutory standard of § 7703(c). *See Kelliher*, 313 F.3d at 1275. Under § 7703(c), we review "only to ensure that the [MSPB's] determination is (1) not arbitrary or capricious, (2) [not] made without regard to law, or (3) not based on substantial evidence." *Id.* at 1276. We do not substitute our judgment for that of the MSPB, but rather only seek to ensure the decision was "reasonable and rational," and "[w]e do not re-weigh or re-examine the credibility choices made by the fact finder." *Id.* at 1276-77. We use that same § 7703(c) standard in this case and rely on caselaw from the Federal Circuit.

## III. DISCUSSION

The WPA provides a federal agency cannot take "a personnel action with respect to any employee" because of the employee's disclosure of information that the employee reasonably believes evidences "an abuse of authority, or a substantial and specific danger to public health or safety," which the statute protects. 5 U.S.C. § 2302(b)(8)(A)(ii). To establish a *prima facie* case of reprisal for whistleblowing, Abrahamsen had the burden to establish (1) the acting official had the authority to take any personnel action;

(2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action; and (4) the protected disclosure was a contributing factor in the agency's personnel action. *Chambers v. Dep't of the Int.*, 602 F.3d 1370, 1376 (Fed. Cir. 2010) (*Chambers III*).

The MSPB determined that Abrahamsen failed to establish the second factor—that any of his six disclosures were actually protected disclosures.  To prevail on a claim under the WPA, Abrahamsen must show he disclosed information he reasonably believed "evidences (i) a violation of law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." *Chambers v. Dep't of the Int.*, 515 F.3d 1362, 1367 (Fed. Cir. 2008) *(Chambers II)*.  Abrahamsen must prove by a preponderance of the evidence that he made a protected disclosure. *Chambers III*, 602 F.3d at 1376-77. Abrahamsen asserted he reasonably believed his disclosures evidenced both an abuse of authority and a substantial and specific danger to public health or safety.

*A. Whether the MSPB erred by ignoring Abrahamsen's disclosures of bullying in the healthcare setting.*

Abrahamsen contends the MSPB ignored his disclosures of abuse of authority and substantial and specific danger related to bullying in the healthcare setting when it found that his weekend surgery disclosure (Disclosure A) was not statutorily protected.  He asserts he detailed these disclosures in his claims before the OSC,

his submissions to the MSPB, during his hearing, and in closing argument.

> Specifically, Abrahamsen contends:

> Abrahamsen explained in his OSC Complaint (Discl. A, Part 4) the personnel actions started with a memo, which was the counseling with a threat. In his submissions to the OSC, Abrahamsen provided his memo to Wright, the Chief of Surgery, on September 13, 2013 detailing bullying and intimidating behavior from Baumann toward Abrahamsen and other staff. Statements and other documents provided enough clarity and precision for the OSC to recognize Abrahamsen's complaint of "bullying and intimidating behavior" as a basis for Abrahamsen's request for corrective action. As reflected in the OSC's closure letter, Abrahamsen exhausted the part of Disclosure A directed towards Baumann's abuse of authority related to bullying: "Subsequently, you filed a complaint with Chief of Surgery Dr. Terry Wright about Dr. Baumann's alleged bullying and intimidating behavior toward you and other staff members, which you also believe to have been part of a retaliatory hostile work environment." That same evidence showed that the bullying in the healthcare setting was a substantial and specific danger to health and safety.

Abrahamsen contends the MSPB "completely ignored" this evidence of bullying.

Abrahamsen argues the MSPB erred by failing to consider certain evidence concerning the purported bullying behavior by Baumann, including a September 13, 2013, letter that identified three specific incidents. The fact the MSPB did not recount Abrahamsen's arguments as thoroughly as Abrahamsen would have preferred does not mean the MSPB did not sufficiently consider them. See Snyder v. Dep't of Navy, 854 F.3d 1366, 1373 (Fed. Cir. 2017). As to Disclosure A, the MSPB determined Abrahamsen's statement to Baumann that it was his call when to operate on a hip fracture was "in the nature of a mere disagreement with his supervisor's statement that he needed to stop operating on hip fractures on the weekends." The MSPB detailed much of Abrahamsen's evidence relevant to this disclosure, concluding the disclosure could not reasonably be seen as Baumann forbidding Abrahamsen from doing emergency surgeries on the weekends. The MSPB concluded Abrahamsen did not make a protected disclosure by disagreeing with Baumann on this basis. The MSPB also determined Abrahamsen's contention of potential future harm to patients based on Disclosure A "to be purely speculative." The MSPB specifically determined Disclosure A did not constitute a substantial and specific danger to public health and safety and did not constitute an abuse of authority by Baumann with regard to the statement. Although the MSPB did not specifically identify each

incident of bullying, the MSPB's overall findings regarding the protected nature of the disclosure cover those incidents. *See id.*

The MSPB's decision as to Disclosure A was not arbitrary or capricious, was not made without regard to law, and was based on substantial evidence. Therefore, we deny Abrahamsen's petition as to this issue.

*B.  Whether the MSPB erred by applying the wrong legal standard to Abrahamsen's disclosures of substantial and specific danger to public health or safety and whether substantial evidence supports the MSPB's decision .*

Abrahamsen contends the MSPB erred by applying the wrong legal standard of substantial and specific danger to his anesthesia-related disclosures (Disclosures B-D).   However, his arguments on this issue focus on the MSPB's weighing of the evidence. The MSPB applied the "reasonable belief" test and the *Chambers* factors to Abrahamsen's disclosures of substantial and specific danger. *Lachance v. White*, 174 F.3d 1378, 1380-81 (Fed. Cir. 1999); *Chambers II*, 515 F.3d at 1369; *Chambers III*, 602 F.3d at 1376.

The MSPB "must look for evidence that it was reasonable to believe that the disclosures revealed misbehavior described by section 2302(b)(8)." *Lachance*, 174 F.3d at 1380. The test is: "could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence gross

mismanagement?  A purely subjective perspective of an employee is not sufficient even if shared by other employees." *Id.* at 1381.

A "variety of factors" help "determine when a disclosed danger is sufficiently substantial and specific to warrant protection under the WPA." *Chambers II*, 515 F.3d at 1369.  First is the likelihood of harm resulting from the danger—"[i]f the disclosed danger could only result in harm under speculative or improbable conditions, the disclosure should not enjoy protection." *Id.*  Another factor is when the alleged harm may occur—"[a] harm likely to occur in the immediate or near future should identify a protected disclosure much more than a harm likely to manifest only in the distant future." *Id.*  Also important is the nature of the harm—"the potential consequences." *Chambers III*, 602 F.3d at 1376.  Further, a disclosure may be protected if it disclosed harm that has already occurred. *Id.*

Abrahamsen cites the *Chambers* cases throughout his argument on appeal, and while he does not cite *Lachance*, he does not argue the "reasonable belief" test was incorrectly used.  Thus, we will review the MSPB's decisions regarding Disclosures B-D to see if they are supported by substantial evidence. *See Kelliher*, 313 F.3d at 1276.

As to the anesthesia-related disclosures, the MSPB discussed various medical journal articles submitted by Abrahamsen and testimony by Abrahamsen and other Bay Pines medical personnel. While the medical literature generally supported Abrahamsen's claim that general anesthesia is associated with an incidence of

various potentially serious complications, including stroke, there was not dispute that the overall risk of such complications was "very, very low." Thus, even in a situation where a patient was about to undergo surgery with general anesthesia, there was a low "likelihood of impending harm," and the harm was not "likely to result in the reasonably foreseeable future." *See Chambers III*, 602 F.3d at 1376; *Chambers II*, 515 F.3d at 1369. Additionally, the evidence showed that Abrahamsen merely assumed other surgeons were not using spinal anesthesia when performing total knee and hip replacement surgeries at Bay Pines, when testimony proved otherwise. Thus, Abrahamsen did not have a reasonable belief that all total knee and hip replacements were being performed under general anesthesia as the facts known to or reasonably ascertainable to him showed the statement was incorrect. *See Lachance*, 174 F.3d at 1381. Further, the general statements of scientific evidence at the M&M conferences did "not constitute an allegation of wrongdoing sufficient to constitute a protected disclosure." *See Chambers III*, 602 F.3d at 1376. And, as to the specific patients discussed at the M&M conferences, there was no evidence of a causal correlation between the use of general anesthesia and the patients' negative outcomes. *See id.*

Because there was no dispute that using general anesthesia for such procedures met the accepted standard of care in the orthopedic community, the MSPB declined to find that Abrahamsen made a protected disclosure of a substantial and specific danger to public health or safety. This conclusion on Disclosures B-D was

supported by substantial evidence, was not arbitrary or capricious, and applied the correct law. *See Kelliher*, 313 F.3d at 1276.

## IV.  CONCLUSION

The MSPB's decision was not arbitrary or capricious or made without regard to law and was based on substantial evidence.  Therefore, we deny Abrahamsen's petition for review.

**PETITION DENIED.**